ROBERT O. TREADWELL vs. JOHN P. TREADWELL.

Suffolk.    March 19, 1900. — September 12, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Trustee and Cestui que trust — Debt — Commission charged by Trustee — Suit by Cestui que trust for Account and Payment — Statute of Limitations.*

When a trustee with the full knowledge of the *cestui que trust* has taken all the proceeds of the trust property and has become his debtor for it, the whole transaction has been reduced in fact to a debt due from the trustee to the *cestui que trust.* When this is followed by the financial ruin of the trustee, there is no room to hold that the trust relation also continues, because by the understanding of the two the debt was to be paid when a favorable investment should be found. In such a case there is no trust property except the debt due from the trustee, which cannot be collected, and there is no occasion to end the trust, for it has been already changed into a debt; and the fact that the trustee charged a commission of five per cent on income is not so far inconsistent as to preclude the conclusion that the *cestui que trust* became a creditor of the trustee, there having been much confusion in the minds of both parties throughout the transactions.

A suit in equity by a *cestui que trust* against a trustee for an account and for the transfer and payment of both principal and income, brought eighteen years after the transaction between them had been reduced to a mere chose in action, is barred by the statute of limitations.

BILL IN EQUITY, inserted in writ and brought in this court, dated May 13, 1895, to require the defendant to render an account of his administration of a trust and to pay over to the plaintiff the principal thereof and all income which had or should have been derived therefrom.

The case was referred to a master, the exceptions to whose report were overruled, and the report was confirmed on October 24, 1898. The bill was thereafter dismissed; and the plaintiff appealed. The facts appear in the opinion.

*R. Stone*, for the plaintiff.

*S. Lincoln*, for the defendant.

LORING, J. This case comes up on an appeal from a decree overruling the plaintiff's exceptions to the master's report and dismissing the bill. The only questions argued in this court are the two questions, whether the plaintiff has been guilty of such unreasonable delay, either in making a demand or in bring-

ing this action, that he ought not to be allowed to recover, and whether the statute of limitations is a bar to this action.

From the findings made by the master, it appears that on the 30th day of September, 1869, the plaintiff and the defendant, who are brothers, executed an indenture of trust, by which the plaintiff transferred to the defendant certain personal property of the face value of $23,500, in trust to sell, invest, and hold the same for the benefit of the plaintiff, until the indenture was revoked by a writing to that effect recorded in the Suffolk Registry of Deeds; the personal property so transferred to the defendant consisted of four notes, five railroad bonds, and two bonds of the United States of America. The investments which by the indenture of trust it was contemplated should be made were investments in real estate.

Two days after the execution of the indenture the four notes were paid, and $17,000, the amount thereof, together with $300.09, interest, was received by the defendant. On June 6, 1872, two years and eight months after the date of the indenture of trust, the United States bonds were sold, and the proceeds, amounting to $1,681.87, were received by the defendant; and three months later, or nearly three years after the date of the indenture, the railroad bonds were paid at maturity to the defendant and the proceeds, $4,985, were also received by the defendant. In 1872, and after this sale, the defendant invested $6,011.77 of the trust funds in discounting a note of Richardson, Page, and Company, due in six months; this was repaid seven months afterward, with interest for the time it was overdue. With the exception of this investment all the money received from the collection and sale of the personal property transferred to the defendant by the indenture of trust was used by him in his own investments.

The defendant had on his books a ledger account with the plaintiff which had been begun before the indenture of September 30, and was continued after that date without change. In this account the defendant was credited with the proceeds of the four notes, five railroad bonds, and two United States bonds as they were received, and with interest at seven per cent on the daily balance of cash in the defendant's hands; in this account was also entered the interest on the original investments, and

on the only new investment in the Page-Richardson note, while those investments were held by the defendant. The defendant also charged the plaintiff with five per cent commission on the income of the trust property collected by him, including in that income the interest on the daily balance due from himself. In the same account there were entries crediting the defendant with sums due from other sources, and charging him with payments made generally on his account. The defendant sent the plaintiff regular statements of this account from 1869 up to and including June, 1877. These statements were usually sent once in three months, and were a complete transcript of the plaintiff's account as it stood on the defendant's books.

Except in the years 1869 and 1870, the payments made by the defendant to the plaintiff " were uniformly less than the total amounts carried to his credit, so that the amount standing to the credit of the plaintiff steadily increased, and by the end of the year 1877 it amounted to $29,086.99, which was more than the proceeds of the original securities by nearly $5500." " By the end of the year 1877, they [the defendant's investments] were entirely gone, and the defendant was financially ruined ; " in 1877 all remittances from the defendant to the plaintiff stopped, and the plaintiff was made aware, by the stopping of these remittances, " that the defendant was unable to meet his obligations, and the defendant's financial failure soon became well known to the plaintiff through other members of his family."

The plaintiff, who was a physician, went to Europe shortly after the execution of the indenture of trust, and remained there until the end of the year 1893, with the exceptions of a short time in 1874 and of six months in 1889 ; since 1893 the plaintiff has remained in this country. The defendant is a lawyer and resided in Boston during all the time in question. On April 1, 1895, the plaintiff filed in the Suffolk Registry of Deeds a revocation of the trust, and, on the 13th of May following, brought this bill against the defendant for an accounting.

The master made the following findings: " On the evidence as a whole, I find that the defendant took and used the plaintiff's money allowing him interest thereon, and made himself a debtor for the sums so used; that he informed the plaintiff

of what he was doing; that the plaintiff acquiesced in the arrangement, and that the terms of the indenture were modified or suspended by mutual understanding so as to permit it, at least until the money should be invested in the plaintiff's behalf; and that the plaintiff waived all provisions of the indenture inconsistent with this method of using the money." " The fact that the defendant was charging a commission on income might indicate, if standing alone, that he was collecting the income from some person other than himself, and this charge is not altogether easy to explain in view of the actual situation and the position taken by the defendant in his accounts and correspondence. But, whatever may have been the defendant's explanation of this charge on income which he was paying out of his own pocket, the charging of the commission could not, in my judgment, have misled the plaintiff into the belief that this interest, periodically credited at the invariable rate of seven per cent, was anything else than what it purported to be, a credit allowed by the defendant on the daily balance standing to the plaintiff's credit."

The master has found that when the defendant was ruined financially at the end of the year 1877 and all remittances from him stopped and the defendant's financial ruin became known to the plaintiff, as it did shortly after it took place, there was no longer any trust in existence in fact, although the indenture of trust had not been technically revoked. When a trustee with the full knowledge of the *cestui que trust* has taken all the proceeds of the trust property and has become his debtor for it, the whole transaction has been reduced, in fact, to a debt due from the trustee to the *cestui que trust*. When this is followed by the financial ruin of the trustee, there is no room to hold that the trust relation also continues because by the understanding of the two, the debt was to be paid when a favorable investment should be found. In such a case there is no trust property except the debt due from the trustee, which cannot be collected, and there is no occasion to end the trust, for it has been already changed into a debt. There was no recognition by the defendant of any trust after 1877. The suit, having been brought eighteen years after the transaction had been reduced to a mere chose in action, is barred by the statute of limitations.

*Campbell* v. *Whorisky*, 170 Mass. 63, has been much relied on by the plaintiff; but in that case the money was not to become due until demanded by the plaintiff, and the plaintiff supposed that her money was safe, and her right to it was recognized by the defendant until he refused to pay her her money when she demanded it. This cannot be said in this case, after the defendant, having with the plaintiff's knowledge taken all the proceeds of the trust fund and become his debtor therefor, became financially ruined.

The plaintiff argues that the charge of a five per cent commission on income is inconsistent with the conclusion that the defendant became a debtor of the plaintiff for the amount of the proceeds of the trust property. There seems to have been much confusion in the minds of both parties throughout these transactions; but we agree with the master that this fact is not controlling, and in spite of it we affirm the finding made by the master on the whole evidence.

*Decree dismissing the bill affirmed.*